1
2
3
4                    UNITED STATES DISTRICT COURT

5             FOR THE NORTHERN DISTRICT OF CALIFORNIA

6                          OAKLAND DIVISION

7

8  UNITED STATES OF AMERICA,              Case No:  11-00329 SBA

9            Plaintiff,                   **ORDER DENYING MOTION TO**
                                          **SUPPRESS**
10      vs.
                                          Docket 28.
11 DUSTIN BURT,

12           Defendant.

13

14

15          The parties are presently before the Court on Defendant Dustin Burt's ("Defendant")

16 motion to suppress out-of-court identifications and any in-court identification of him.  Dkt.

   28.  Alternatively, Defendant requests an in-court line-up procedure during his trial and an
17
   alternative seating arrangement whereby he is allowed to sit in the courtroom audience
18
   before and during the testimony of prosecution identification witnesses.  Dkt. 28.  The
19
   United States of America ("Plaintiff") opposes the motion.  Dkt. 36.  Having read and
20
   considered the papers filed in connection with this matter and being fully informed, the
21
   Court hereby DENIES the motion to suppress and DENIES Defendant's alternative request
22
   for relief, for the reasons stated below.
23
   I.       **BACKGROUND**
24
            **A.      Factual Background**
25
            The following facts are undisputed.  On February 24, 2011, the Metro 1 Credit
26
   Union in Concord California was robbed by a man wearing a white turban.  On March 7,
27
   2011, a man wearing a white turban robbed Chase Bank in Danville, California.  The
28

suspect was described as a light-skinned black or other ethnic male.[1]  After local and federal law enforcement officers[2] conducted witness interviews and prepared and administered photographic lineups,[3] Defendant was indicted on two counts of bank robbery in violation of 18 U.S.C. § 2113(a).

###### B.    Motion to Suppress

On October 31, 2011, Defendant filed a motion to suppress the out-of-court identifications made by five individuals following the photographic lineups prepared and administered by the Concord Police Department, the Danville Police Department, and the FBI.  The five individuals are: Sandra Quintanilla ("Quintanilla"), Nicole Pittman ("Pittman"), Alicia Delgado ("Delgado"), Richard Holcombe ("Holcombe"), and Raul Bueno ("Bueno").  See Mtn. to Suppress, Dkt. 28.

At the time of the robberies, Ms. Quintanilla and Ms. Pittman were bank tellers for Metro 1 Credit Union in Concord, and Ms. Delgado was a bank teller for Chase Bank in Danville.  See Mtn. to Suppress at 2-3, 7-10, Exhs. B, E.[4]  All of these individuals identified Defendant as the offender after viewing either the Concord or Danville photographic lineup.  See id. Exhs. J, M.[5]  Mr. Holcombe, the owner of a business near Chase Bank in Danville, reported seeing a suspicious person near the bank in a gray or green 2003 or 2004 Hyundai on the morning of the Danville robbery.  See id. at 4, 10-11,

---

[1] Defendant describes himself as mixed race with light skin.  Mtn. to Suppress at 18.

[2] Local law enforcement – the Concord Police Department and Danville Police Department – coordinated their investigation with the Federal Bureau of Investigation ("FBI").

[3] Two different lineups were used for the bank witnesses, the Concord Police Department lineup and the Danville Police Department lineup.  Mtn. to Suppress at 1, 18.  A third lineup was prepared and administered by the FBI for collateral witnesses.  Id.

[4] Exhibit B to the motion to suppress is the Concord Police Department Offense Report, dated February 24, 2011.  Exhibit E is the Contra Costa County Sheriff's Supplemental Report, dated March 7, 2011.

[5] Exhibit J to the motion to suppress is the Concord Police Department Offense Report, dated March 29, 2011.  Exhibit M is the Contra Costa County Sheriff's Supplemental Report, dated April 18, 2011.

Exhs. F, M.[6]  He subsequently identified Defendant as that individual after viewing the Danville photographic lineup.  Id. at 11, Exh. M.  Mr. Bueno identified Defendant from the FBI photographic lineup as the individual who bought his brother's 2001 green Hyundai Accent on February 26, 2011, approximately one week before the Danville robbery.  Id. at 5, 11-12, Exh. I, T.[7]

Defendant moves to suppress the out-of-court identifications made by these individuals and all fruit thereof on the grounds that the photographic lineups were impermissibly suggestive and the identifications are not reliable.  See Mtn. to Suppress at 1-2, 18-23.  Defendant also seeks to suppress any in-court identification of him at trial.  Id. at 2.  Alternatively, if the Court does not suppress the out-of-court identifications and allows in-court identifications, Defendant requests that the Court grant him an in-court lineup procedure during his trial and an alternative seating arrangement whereby he is allowed to sit in the courtroom audience before and during the testimony of prosecution identification witnesses.  Id. at 2, 24.

On December 5, 2011, Plaintiff filed an opposition, arguing that the motion to suppress should be denied because the lineup procedures used by law enforcement were not impermissibly suggestive, and the identifications were reliable.  Pl.'s Opp. at 1, Dkt. 36.  Plaintiff  further argues that any challenges to the accuracy of the identifications, or any claims that the identifications were improperly induced by the police, can be explored through cross-examination, and any weight to be accorded to the identifications is a determination for the jury.  Id.  A reply was filed on December 27, 2011.  Dkt. 42.

---

[6] Exhibit F to the motion to suppress is the Contra Costa County Sheriff's Supplemental Report, dated March 23, 2011.

[7] Exhibit I to the motion to suppress is a report prepared by the FBI, identified as FBI 302.  This document is dated March 14, 2011.  Exhibit T is a report prepared by the FBI, also identified as FBI 302.  This document is dated March 14, 2011.

## II.     DISCUSSION

### A.     Legal Standard

The Due Process Clause of the Fourteenth Amendment provides that "[n]o person shall be deprived of life, liberty, or property without due process of law."  U.S. Const. Amend. XIV.  Due process protects against the admission of evidence derived from impermissibly suggestive pretrial identification procedures.  See Neil v. Biggers, 409 U.S. 188, 196 (1972).  Suppression of evidence of an out-of-court photographic identification is appropriate only where the identification procedure was so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  Biggers, 409 U.S. at 197; United States v. Beck, 418 F.3d 1008, 1012 (9th Cir. 2005).  If a challenged procedure is not impermissibly suggestive, the inquiry into the due process claim ends. United States v. Bagley, 772 F.2d 482, 492 (9th Cir. 1985).

Should a court find a pretrial procedure impermissibly suggestive, automatic exclusion of identification testimony is not required.  Bagley, 772 F.2d at 492.  Even a suggestive identification procedure does not violate a defendant's due process rights if under the "totality of the circumstances" the identification was reliable.  United States v. Drake, 543 F.3d 1080, 1088 (9th Cir. 2008).  Factors to be considered include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."  Biggers, 409 U.S. at 199-200; Drake, 543 F.3d at 1088. In applying these factors, "the reliability of the identification evidence is tested by weighing the indicia of reliability against the corrupting tendencies of the suggestive pretrial identification procedure, that is, against the indicia of improper influence."  United States v. Field, 625 F.2d 862, 867 (9th Cir. 1980).

///

///

///

### B.     Motion to Suppress

Defendant argues that the out-of-court identifications should be suppressed because the lineup procedures were impermissibly suggestive and because the identifications are not reliable.  The Court will address these arguments in turn below.

### 1.     Photographic Lineups

Defendant contends that the Concord and Danville photographic lineups were impermissibly suggestive for the following reasons: (1) most of the "fillers"[8] used in both lineups do not resemble Defendant or the description of the bank robber; (2) the Concord lineup contains black and white photographs designed to disguise the skin color of the dark-skinned fillers; (3) Defendant's photograph stands out in the Concord lineup because it is cropped and he is closer to the camera than the other fillers, and the background is slightly darker than the fillers' photographs; (4) Defendant's photograph stands out in the Danville lineup because Defendant's face is much larger than the others and the background is bright and white while the other photographs have blue backgrounds; (5) there is an apparent wide age difference in the Danville lineup between Defendant and at least one of the fillers; (6) in both the Concord and Danville lineups the fillers and Defendant all had goatees when the suspect was not described as having a goatee or other facial hair; and (7) both lineups were not blindly administered, i.e., the individuals administering the lineup knew the identity of the suspect.  Mtn. to Suppress at 18-20; Reply at 6.

The Court concludes that the circumstances under which the witnesses identified Defendant were not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.  The Court has reviewed the photographic displays and finds that the insubstantial differences in appearance between the Defendant's photograph and the others do not in themselves create an impermissible suggestion that Defendant is the offender, nor do they imply that the witnesses should identify the Defendant as the offender.  See United States v. Burdeau, 168 F.3d 352, 357 (9th Cir. 1999)

---

[8] "Fillers" are the individuals in the lineup other than Defendant.

(holding that a photographic array was not impermissibly suggestive even though the defendant's picture "was placed in the center of the array, was darker than the rest, and was the only one in which the eyes were closed"); United States v. Carbajal, 956 F.2d 924, 929 (9th Cir. 1992) (array not impermissibly suggestive when defendant's photograph was only one in which individual wore wig and had discernible bruises on face); United States v. Nash, 946 F.2d 679, 681 (9th Cir. 1991) (rejecting argument that photospread was unduly suggestive because only two other men pictured had light complexion and only one other man had an "afro hairstyle"); Mitchell v. Goldsmith, 878 F.2d 319, 323 (9th Cir. 1989) (holding that "[t]he various background colors among . . . photographs and the 1981 date on [defendant's] photo [did] not make the line-up unduly suggestive"); United States v. Johnson, 820 F.2d 1065, 1073 (9th Cir. 1987) (photographic array was not impermissibly suggestive when the defendant was the only person in the lineup over the age of thirty, two others in the lineup were noticeably more clean shaven than the defendant, and the photograph of the defendant was hazier than the other photos in the photo montage); United States v. Sambrano, 505 F.2d 284, 286 (9th Cir. 1974) (photographic array in which defendant's photograph was darker and clearer was not impermissibly suggestive).[9]

---

[9] The Court notes that Defendant did not specifically argue that the lineup prepared and administered by the FBI was impermissibly suggestive. Instead, Defendant contends that the FBI used flawed procedures to administer this lineup, including failing to use an interpreter for Mr. Bueno whose primary language is Spanish, showing Mr. Bueno the lineup two days in a row, and informing Mr. Bueno that the suspects were in custody and that other witnesses made identifications. Mtn. to Suppress at 22. To the extent Defendant contends that the FBI lineup was impermissibly suggestive, the Court disagrees. The Court has reviewed the evidence in the record and concludes that the circumstances under which Mr. Bueno identified the Defendant were not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. See Mtn. to Suppress, Exhs. I, T. The record reflects that when the FBI agent met with Mr. Bueno the English/Spanish translation was done by Mr. Bueno's brother. Id., Exhs. I, T. During his first meeting with the FBI, Mr. Bueno told the FBI agent that the suspect was in the photographic lineup, but that he was hesitant to identify the suspect out of fear for his family. Id., Exhs. I. The FBI agent told Mr. Bueno that although he could not guarantee that Mr. Bueno would not be retaliated against if he identified the suspect, the "likeliness" of such retaliation under the circumstances is reduced because several witnesses had already identified the suspect and because some of the people involved had already been arrested. Id. After Mr. Bueno informed the FBI agent that he was still reluctant to make the identification, the agent told Mr. Bueno that he would return the next day. Id. The following day, the FBI agent met with Mr. Bueno. Id., Exh. T. At this meeting, he identified the suspect from the photographic lineup. Id.

1    In light of this determination, the Court need not address whether the witnesses'

2    identifications were reliable under the totality of the circumstances. <u>Bagley</u>, 772 F.2d at

3    492 (if a challenged procedure is not impermissibly suggestive, the inquiry into the due

4    process claim ends). However, the Court will briefly discuss this issue below.

5                    **2.      Reliability of the Out-of-Court Identifications**

6            Even assuming for the sake of argument that the lineups in this case were unduly

7    suggestive, the Court concludes that the out-of-court identifications were reliable under the

8    totality of the circumstances. A review of the evidence in the record indicates that the

9    witnesses had an adequate opportunity to view Defendant with a degree of attention, they

10   identified Defendant shortly after the robberies occurred, and were sufficiently certain that

11   Defendant was the suspect. <u>See</u> Mtn. to Suppress, Exhs. B, E, F, I, J, M, T. Therefore, the

12   record amply supports the conclusion that the identifications were reliable under the

13   circumstances. Defendant, for his part, did not point to any facts in the record or present

14   persuasive argument compelling a contrary conclusion. Accordingly, Defendant's motion

15   to suppress is DENIED.

16                   **3.      Defendant's Alternative Request for Relief**

17           As for Defendant's alternative request for relief, the Court concludes that Defendant

18   has failed to demonstrate that an in-court lineup procedure during his trial is warranted.

19   <u>See</u> <u>Burdeau</u>, 168 F.3d at 358 (a district court has no obligation to arrange an in-court

20   lineup where the photographic array does not taint the witnesses' identification of the

21   suspect). The Court also concludes that Defendant has failed to demonstrate that he should

22   be allowed to sit in the courtroom audience before and during the testimony of prosecution

23   identification witnesses. Accordingly, Defendant's alternative request for relief is

24   DENIED.

25   ///

26   ///

27   ///

28   ///

III.    **CONCLUSION**

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1.      Defendant's motion to suppress is DENIED.

2.      Defendant's alternative request for relief is DENIED.

3.      This Order terminates Docket 28.

IT IS SO ORDERED.

Dated:  1/23/12

_SAUNDRA B. Armstrong_

SAUNDRA BROWN ARMSTRONG
United States District Judge